GARRISON, Judge.
The appellants, Abraham N. Goodman, Harry Goodman, Inc., David A. Goodman and Daniel E. Goodman, are the alleged personal guarantors of a loan from Hiber *535 nia National Bank to Allied Recycling Corporation. This loan was secured by certain chattels which were destroyed by fire in 1980 and which were insured by National Surety Corporation of California.
When Allied defaulted on this loan, Hibernia made demand on the appellants as guarantors of the loan and accepted $250,-000 in settlement of its claims against appellants thereby reducing, but not eliminating, Hibernia’s loss on the loan. Subsequently, Hibernia filed a lawsuit against several insurance companies, insurance agents and others seeking a monetary judgment as an alleged loss payee under National Surety’s insurance policy.
Because the appellants believed that the balance of the loan had been reduced further by seizure and sale of assets securing the loan which were not destroyed, appellants intervened in the above-mentioned lawsuit filed by Hibernia. In this intervention, appellants sought to recover any amounts recovered by Hibernia against National Surety in excess of the balance of the loan after the appellants’ settlement with Hibernia minus any additional sums obtained by Hibernia’s reduction of the loan by seizure and sale of the undestroyed assets.
National Surety Corporation of California filed exceptions of no right of action and no cause of action urging that the appellants’ intervention be dismissed. National Surety argued that appellants have no right to intervene in this lawsuit because of stipulations of the settlement agreement between appellants and Hibernia. According to National Surety, Hibernia reserved complete control over settlement or trial in this lawsuit as evidenced by the following pertinent sections of the settlement agreement:
5.THE BANK may, in its sole discretion, elect to continue to litigate the lawsuit pending in the State of Louisiana against the insurers of the said collateral. If THE BANK does so elect to continue to litigate said lawsuit, THE BANK will retain full control over said lawsuit and will have absolute discretion and authority with respect to the settlement, dismissal, compromise or ultimate trial of same.
6. In the event THE BANK so elects to continue to litigate the lawsuit pending in the State of Louisiana, if any recovery is made by THE BANK either by way of settlement or judgment, THE BANK will be entitled to retain all of the net proceeds recovered, after payment of attorneys’ fees, costs and expenses, up to the amount of ONE HUNDRED FIFTY-SIX THOUSAND SEVEN HUNDRED TWENTY-FOUR AND 14/100 ($156,-724.14) DOLLARS. In the event any recovery received by THE BANK in said lawsuit is less than ONE HUNDRED FIFTY-SIX THOUSAND SEVEN HUNDRED TWENTY-FOUR AND 14/100 ($156,724.14) DOLLARS, it is agreed that said net recovery will be the property of THE BANK.
7. In the event THE BANK receives a settlement or judgment over and above the amount allowed in Paragraph 6 of this Agreement, THE BANK will pay to THE DEFENDANTS, through their attorneys, all surplus proceeds;”
In their opposition to the exceptions of no right of action and no cause of action, appellants refer to another section of the settlement agreement which states as follows:
4. ABRAHAM N. GOODMAN, HARRY GOODMAN, INC., DAVID A. GOODMAN and DANIEL E. GOODMAN shall retain all of their existing rights to proceed against ALLIED RECYCLING CORPORATION, or any other parties, other than HIBERNIA NATIONAL BANK IN NEW ORLEANS, for the purpose of attempting to obtain reimbursement of monies paid to HIBERNIA NATIONAL BANK IN NEW ORLEANS under the terms of this Settlement Agreement.”
This matter was referred to a Civil District Court Commissioner who recommended that the exceptions be maintained and that the intervention be dismissed at intervenors’ costs. In his reasons, the Commissioner rejected the appellants’ argument that they became partially subro- *536 gated to the rights of Hibernia against National Surety by virtue of the settlement agreement between appellants and Hibernia, finding that the settlement agreement did not give them subrogation rights because of the partial payment of the debts of Allied. The Commissioner also rejected appellants’ argument that they are legally subrogated to the rights of Hibernia against National Surety by virtue of LSA-C.C. art. 3053, finding that the article does not provide for general subrogation of a surety to all rights of the creditor against all parties but only for subrogation of a surety to the rights of a creditor against the principal debtor after the surety has paid the creditor. Therefore, the Commissioner found that the appellants are legally subrogated to the rights of Hibernia to proceed against Allied, the principal debtor, as stipulated in the settlement agreement, but appellants have no subrogation rights against National Surety because under the terms of the agreement between appellants and Hibernia, Hibernia retained the sole right and cause of action in this lawsuit against “the insurers of the said collateral”, i.e. National Surety.
The trial judge adopted the recommendation of the Commissioner and maintained the exceptions of no right of action and no cause of action filed by National Surety Corporation of California against the intervention of appellants and dismissed the intervention at the appellants’ costs. The appellants now appeal that judgment.
On appeal, the appellants argue that the trial judge erred in dismissing the intervention. Specifically, appellants claim that they have the right to intervene by virtue of LSA-C.C. art. 3053 and the settlement agreement between appellants and Hibernia.
LSA-C.C. art. 3053, in effect at the time that this action arose, stated that “the surety has the same right of action and the same privilege of subrogation which the law grants to codebtors in solido.” Appellants cite this article in support of their argument that, as sureties of Allied, the laws of suretyship provide them with certain rights outside of the provisions of the settlement agreement.
Appellants also contend that it is possible to assert their intervention claim without interfering with Hibernia’s right to exclusively control the disposition of its claim as stipulated in the settlement agreement. They cite LSA-C.C.P. art. 1091 which allows intervention if the intervenor has a right related to or connected with the object of the pending action.
Appellant’s arguments can be summarized as follows: Hibernia has sole interest in pursuing any claim for the unpaid balance of the insurance proceeds collected on policies insuring the destroyed chattels but appellants should be allowed to intervene in this lawsuit to enforce their right to collect any amounts recovered by National Surety and other insurers in excess of any insurance proceeds owed to Hibernia. Appellants further argue that the settlement agreement specifically recognizes the appellants’ right to collect these excess insurance proceeds.
After reviewing the settlement agreement between appellants and Hibernia; we conclude that the commissioner’s findings in this case were correct. The agreement clearly states that Hibernia has retained the sole right in this lawsuit to proceed against “the insurer of the said collateral”, i.e. National Surety. Appellants, as sureties of Allied who paid Allied’s debt to Hibernia, are subrogated to the rights of Hibernia to proceed against Allied but not against National Surety. The suretyship articles cited by appellants, particularly LSA-C.C. art. 3053, only entitle appellants to proceed against the debtor for whom the surety has paid the creditor, i.e. Allied.
For these reasons, we affirm the trial court judgment adopting the findings of the commissioner, maintaining National Surety’s exceptions of no right of action and no cause of action against appellants’ intervention and dismissing appellants’ intervention at appellants’ costs.
AFFIRMED